IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES OESTE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ZYNGA, INC., <br><br> Defendant. | Civil Action No.: GLR-20-1566 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Zynga, Inc.'s ("Zynga") Motion to Transfer Case, or in the Alternative, to Dismiss for Lack of Personal Jurisdiction and Improper Venue ("Motion to Transfer") (ECF No. 11).[1] The Motion is ripe for disposition,

---

[1] Also pending before the Court are Plaintiffs' Motion to Reconsider Order Granting Pro Hac Vice Admission to this Court ("Motion to Reconsider") (ECF No. 12); Motion to Strike Defendant Zynga's Exhibits and Argument ("Motion to Strike") (ECF No. 13); and Motion for Limited Discovery (ECF No. 16).
  In their Motion to Reconsider and Motion to Strike, Plaintiffs outline a litany of complaints against counsel for Zynga—specifically, that she misled Plaintiffs' counsel about her reason for requesting an extension to respond to the Complaint; failed to comply with the Court's guidelines for electronic signatures; and knowingly submitted to this Court affidavits containing perjury. Having reviewed these Motions and the Oppositions thereto, the Court finds that counsel's conduct was appropriate and there is no need to revoke her pro hac vice status or strike the affidavits submitted with the Motion to Transfer. Accordingly, these Motions will be denied.
  In their Motion for Limited Discovery, Plaintiffs seek jurisdictional discovery regarding Zynga's marketing and sales contacts with Maryland residents to assess whether this Court has personal jurisdiction over Zynga. Importantly, however, "[a] district court has the power to transfer venue under § 1404(a) even if it lacks personal jurisdiction over the defendants in the action." Starks v. Am. Airlines, Inc., 368 F.Supp.3d 866, 869 (D.S.C. 2019) (citing Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 112 (2d Cir. 2001)). Because the Court will transfer this case to the United States District Court for the Northern District of California, there is no need for jurisdictional discovery. Accordingly, the Motion for Limited Discovery will be denied as moot.

and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant Zynga's Motion and transfer this case to the United States District Court for the Northern District of California.

## I. BACKGROUND[2]

Defendant Zynga is a San Francisco, California-based developer of games for mobile devices and social networking platforms. (Compl. ¶¶ 1, 2, ECF No. 1). In order to download Zynga's games, users must either create an account with Zynga and provide certain personally identifying information ("PII"), such as their full name, email address, phone number, gender, and password, or link their Zynga account to their personal Facebook account. (Id. ¶ 16). Zynga routinely collects and retains users' PII and Facebook log-in information. (Id. ¶ 17).

On or before September 12, 2019, Zynga suffered a data breach that affected as many as 173 million user accounts. (Id. ¶ 21). Zynga did not notify its users of the breach by email or through a notification on their gaming apps; rather, Zynga posted a "Player Security Announcement" to its website stating that "certain player account information may have been illegally accessed by outside hackers." (Id. ¶ 24). Thus, "[t]he only way for a user to know that his or her PII has been unlawfully accessed is if that user were to access Zynga's website on a web browser, or notice instances of fraud or identity theft." (Id. ¶ 25).

---

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

Plaintiffs contend that, as a result, "[l]ikely only a minority of Zynga's users know that their PII has been illegally accessed by hackers." (Id.).

Plaintiffs allege that Zynga was aware or should have known that the information "stored on its servers was highly sensitive, susceptible to attack, and could be used for malicious purposes by third parties, for reasons such as identify theft, fraud, and/or other misuse." (Id. ¶ 29). Nonetheless, "Zynga completely failed to take adequate measures to protect" its users' PII. (Id. ¶ 31). As a result of this failure, Zynga's users "have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud." (Id. ¶ 54). Indeed, some Zynga users were subjected to unauthorized charges on credit and debit cards; assessed penalties for over-drafting from bank accounts and exceeding credit limits; deprived of the use of and access to their cards and funds; and required to expend time, energy, and money to mitigate the consequences of the breach. (Id. ¶¶ 55–56).

On June 9, 2020, Plaintiffs initiated the instant action against Zynga asserting eleven claims on behalf of themselves and a class of similarly situated individuals consisting of: "All persons residing in the United States, including the District of Columbia, whose PII was disclosed in the Zynga Data Breach." (Compl. ¶¶ 59–177, ECF No. 1). Zynga moved to transfer or, in the alternative, to dismiss for improper venue on August 31, 2020. (ECF No. 11). Plaintiffs filed an Opposition on September 10, 2020. (ECF No. 15). Zynga filed a Reply on September 24, 2020. (ECF No. 18).

## II.  DISCUSSION

**A.  <u>Standard of Review</u>**

Motions to transfer are governed by 28 U.S.C. § 1404(a), which provides that "a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent the waste of time, energy, and money" and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted). In all instances, the decision to transfer venue is committed to the sound discretion of the trial court. <u>See</u> <u>Brock v. Entre Comput. Ctrs., Inc.</u>, 933 F.2d 1253, 1257 (4th Cir. 1991) (citation omitted).

To prevail on a motion to transfer venue under § 1404, "the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." <u>Helsel v. Tishman Realty Constr. Co., Inc.</u>, 198 F.Supp.2d 710, 711 (D.Md. 2002) (internal quotation marks and citations omitted); <u>see also</u> <u>Lynch v. Vanderhoef Builders</u>, 237 F.Supp.2d 615, 617 (D.Md. 2002); <u>Dicken v. United States</u>, 862 F.Supp. 91, 92 (D.Md. 1994). The Court may consider affidavits, declarations, and other pertinent evidence in adjudicating a motion to transfer. <u>See, e.g.</u>, <u>Weathersby-Bell v. Wash. Metro. Area Transit Auth.</u>, No. GJH-19-3474, 2020 WL 4501485, at *3 n.3 (D.Md. Aug. 4, 2020) (citations omitted).

4

**B.**     <u>Analysis</u>

Zynga argues that this matter should be transferred to the United States District Court for the Northern District of California because Plaintiffs' claims are subject to a mandatory forum selection clause. Section 1404(a) requires that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." <u>Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Tex.</u>, 571 U.S. 49, 63 (2013) (quoting <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). As such, a forum-selection clause "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." <u>Davis Media Grp., Inc. v. Best W. Int'l, Inc.</u>, 302 F.Supp.2d 464, 466 (D.Md. 2004) (quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972)). A mandatory forum-selection clause is "one containing clear language showing that jurisdiction is appropriate only in the designated forum," while a permissive forum-selection clause permits jurisdiction in the selected forum without "precluding it elsewhere." <u>Koch v. Am. Online, Inc.</u>, 139 F.Supp.2d 690, 693 (D.Md. 2000) (quoting <u>Excell, Inc. v. Sterling Boiler & Mech., Inc.</u>, 106 F.3d 318, 321 (10th Cir. 1997)). While not dispositive of the issue, a forum selection clause will nevertheless "be a significant factor that figures centrally in the district court's calculus." <u>TECH USA, Inc. v. Evans</u>, 592 F.Supp.2d 852, 857 (D.Md. 2009) (quoting <u>Stewart Org.</u>, 487 U.S. at 29).

5

Here, Zynga argues that this action must be transferred because Plaintiffs consented to the Terms of Service,³ which require that claims against Zynga must either be: (1) submitted to arbitration; or (2) if the claims are excepted from arbitration, filed in state or federal court in San Francisco, California. In other words, Zynga contends "that San Francisco is the only appropriate venue for judicial proceedings." (Mem. Supp. Def.'s Mot. Transfer Alt. Dismiss Lack Personal Jurisdiction & Improper Venue ["Mot."] at 9, ECF No. 11-1).

The Court agrees and finds that the plain language of the agreement supports this interpretation. Section 15 of the Terms of Service states:

> By voluntarily accepting these Terms (and in many of our Services by voluntarily clicking or tapping an in-game button to affirmatively indicate your agreement to these Terms), **you, Zynga, and any member of the Zynga Corporate Family all agree to resolve any claims relating to the Terms, Feature Terms, Community Rules, your relationship with us, or Zynga's Services, through final and binding arbitration.** This applies to all claims under any legal theory, unless the claim fits within the Exceptions to Agreement to Arbitrate identified below.

(2018 Terms of Service ["2018 Terms"] at 14–15, ECF No. 11-5). Further, the Terms state that "[i]f any party disagrees about whether this agreement to arbitrate can be enforced or whether it applies to this dispute, the parties all agree that the arbitrator will decide that, too." (Id. at 15).

---

³ Plaintiffs do not dispute that they agreed to the Terms of Service, nor do they argue that enforcement of any of the provisions therein would be unreasonable. Accordingly, the Court will presume that the forum-selection clause is contractually valid. See Atl. Marine Const., 571 U.S. at 62 n.5 (noting that the analysis under § 1404(a) "presupposes a contractually valid forum-selection clause").

Section 15 of the Terms of Service further provides, however, that "[t]he parties all agree that they will go to court to resolve" any claims that fall under the "Exceptions to Agreement to Arbitrate," which are defined as "disputes": (1) "[r]elating to your, Zynga's, or a Zynga Corporate Family member's intellectual property (for example, trademarks, trade dress, domain names, trade secrets, copyrights, or patents);" (2) "[r]elating to any violation of the Community Rules;" or (3) "[w]ithin the jurisdiction of small claims courts." (Id. at 16). Section 17 of the Terms of Service, entitled "Venue for Legal Disputes Not Subject to Arbitration," then states:

> If you are located in the United States, judicial proceedings (other than small claims actions) that are excluded from the Arbitration Agreement in Section 15 must be brought in state or federal court in San Francisco, California, unless the parties agree to some other location. You, Zynga, and the Zynga Corporate Family all consent to venue and personal jurisdiction in San Francisco, California.

(Id. at 18).

Reading these provisions together, it is evident that disputes which qualify as "Exceptions to Agreement to Arbitrate" must be brought in San Francisco courts, while all other claims are subject to arbitration. Because Plaintiffs elected to file a lawsuit in court rather than initiate arbitration, they must necessarily take the position that their claims fall under Section 15's Exceptions to Agreement to Arbitrate. As such, Plaintiffs were required to file their claims in state or federal court in San Francisco, California. Because they failed to do so, it is proper for the Court to transfer this matter.

Plaintiffs attempt to avoid this conclusion by arguing that their "dispute does not fall under one of the enumerated exceptions to the Arbitration Agreement," meaning that

7

it "is not a 'judicial proceeding' that is 'excluded from the Arbitration Agreement in Section 15' of the Terms." (Pls.' Opp'n Mot. Transfer Alt. Dismiss Lack Personal Jurisdiction & Improper Venue ["Opp'n"] at 3, ECF No. 15). Plaintiffs apparently would like the Court to find that the Terms of Service contemplate a category of claims that are not subject to either the arbitration requirement in Section 15 or the forum-selection clause in Section 17, and instead may be filed in the judicial district of Plaintiffs' choosing. This is clearly not what the Terms intend to accomplish. Rather, the language of the Terms makes clear that claims against Zynga must either be submitted to arbitration or, if the claims involve one of the enumerated "Exceptions to Agreement to Arbitrate," filed in San Francisco. Put simply, if Plaintiffs believe their claims may be filed in court rather than submitted to arbitration, they must file them in San Francisco.

Beyond that, the Court finds that the § 1404(a) factors strongly support transfer to the Northern District of California. Courts determining whether to transfer a case under § 1404(a) first ask "whether the action could have been brought in the transferee district." Aphena Pharma Sols.-Md. LLC v. BioZone Labs., Inc., 912 F.Supp.2d 309, 318 (D.Md. 2012). Upon finding that the action could have been brought in the transferee district, the court must then "weigh in the balance a number of case-specific factors." Stewart Org., 487 U.S. at 29. Specifically, "the following case-specific factors are essential to the analysis of a § 1404(a) motion in a case involving a valid forum-selection clause: '(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (2) convenience of the parties, and (4) the interest of justice.'" TECH USA, 592 F.Supp.2d at

857 (quoting Lynch, 237 F.Supp.2d at 617); see also Cross v. Fleet Reserve Ass'n Pension Plan, 383 F.Supp.2d 852, 856 (D.Md. 2005).

As a preliminary matter, Plaintiffs concede that they "could have brought their claims in the Northern District of California." (Opp'n at 4). In addition, each of the § 1404(a) factors strongly supports transfer to that judicial district. First, because this is a class action case, Plaintiffs' choice of forum is afforded little weight. See Evans v. Ariz. Cardinals Football Club, LLC, No. WMN-15-1457, 2016 WL 759208, at *3 (D.Md. Feb. 25, 2016) ("[T]he named plaintiff's choice of forum is afforded little weight because in [a class action] case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." (citation omitted)). Second, the Northern District of California is more convenient for both the parties and witnesses. Zynga's computer systems and relevant documents are primarily located in San Francisco. (See Courant Decl. ¶ 6, ECF No. 11-2). Additionally, most current and former employees with relevant knowledge of the issues in this matter work at Zynga's San Francisco office. (Id. ¶ 5). As a result, aside from Plaintiffs, most witnesses would be outside of this Court's subpoena power. See Starks v. Am. Airlines, Inc., 368 F.Supp.3d 866, 871 (D.S.C. 2019) (holding that witness convenience favored transfer to the Northern District of Texas where witnesses were "likely within the subpoena power of the Northern District of Texas, but not the District of South Carolina"); see also Fed.R.Civ.P. 45(c) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

9

As for the final factor, "the interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum." D2L Ltd. v. Blackboard, Inc., 671 F.Supp.2d 768, 783 (D.Md. 2009) (citation omitted). There are currently three putative nationwide class actions pending in the Northern District of California that are related to the matter before this Court. See I.C. v. Zynga Inc., No. 4:20-cv-01539 (N.D.Cal. filed Mar. 2, 2020); Johnson v. Zynga Inc., No. 4:20-cv-02024 (N.D.Cal. filed Mar. 23, 2020); Martinez v. Zynga Inc., No. 4:20-cv-02612 (N.D.Cal. filed Apr. 15, 2020). These cases, which have been marked as related to one another and assigned to a single judge, involve the same data breach, same putative class, and same statutory claims as the instant case. Because litigating this case in the Northern District of California would "promote judicial economy and consistency of results," the interest of justice weighs strongly in favor of transfer. See Byerson v. Equifax Info. Servs., LLC, 467 F.Supp.2d 627, 636 (E.D.Va. 2006) (holding that transfer was appropriate where earlier-filed related class actions were pending in another district). For these reasons, transfer is appropriate under § 1404(a).

In sum, the Court finds that Plaintiffs consented to a mandatory forum-selection clause and, in any event, the § 1404(a) factors strongly favor transfer. As such, the Court will immediately transfer this matter to the Northern District of California.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Zynga's Motion to Transfer Case (ECF No. 11). A separate Order follows.

Entered this 5th day of May, 2021.

/s/
George L. Russell, III
United States District Judge